# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**SABRINA WILLIAMS,**

    Plaintiff,

vs.

**PANDA TRAVEL, INC.,**
**EAGLE BUS, INC.,**
**PANDORABUS, INC.,**
**PANDORA TOURS, INC.,**
**W & G AGENCY, INC., and**
**LI WANG,**
  Dba or Alias**:**
      **PandaNY Bus, Inc**
      **Pandora Bus**
      **WandaCoach**
      **Wang Li**

    Defendants.

**CIVIL ACTION FILE NO.**

JURY TRIAL DEMANDED

## **COMPLAINT**

COMES NOW Plaintiff Sabrina Williams ("Plaintiff" or "Williams"), who is

African American and disabled, who brings this Complaint against Defendants

Panda Travel, Inc., Eagle Bus, Inc., Pandorabus, Inc., Pandora Tours, Inc., W & G

Agency, Inc., and Li Wang (collectively, "Defendants" or "Panda"; which terms

include aliases and/or d.b.a. names PandaNY Bus, Inc., Wanda Coach, and Pandora Bus, and Wang Li).

1.      This lawsuit arises (i) from Defendants' practice of race discrimination by assigning seats to African Americans in the back part of the bus while assigning seats to Asians in the front part of the bus in violation of 42 U.S.C. § 1981 and in disregard of 49 C.F.R. § 374.101, (ii) from Defendants' refusal to allow Plaintiff access to disability priority seating, on account of her race, while allowing Asians, its employees and/or stacks of bags to occupy such seating in violation of 42 U.S.C. § 1981, (iii) from Defendants' causing a police officer at the DeKalb GA bus station to force her to relinquish a disability priority seat in violation of 42 U.S.C. § 1983, even though months earlier Defendant had called a NY police officer to force Plaintiff to relinquish a disability priority seat in NYC, but the officer approved her occupation of the priority seat and did not force her to move, (iv) from Defendants' discrimination against Plaintiff on account of her disability in violation of 42 U.S.C. § 12184(a) (Title III of the ADA – prohibiting disability discrimination in the full use and enjoyment of transportation services, including Defendants' buses) and various ADA implementing regulations thereunder (as shown below), and (v) from selling or issuing tickets that fail to include, as required by 49 C.F.R. § 374.103, the

2

statement "Seating aboard vehicles operated in interstate or foreign commerce is without regard to race, color, creed, or national origin."

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343.

3.     Venue is proper in this Court, pursuant to 28 U.S.C. 1391(b).  The bus trips taken by Plaintiff originated in Atlanta or ended in Atlanta and the discrimination complained of generally lasted the entirety of each trip.

4.     Defendants' infringement of Plaintiff's contractual rights under 42 U.S.C. § 1981 occurred at the inception of each bus trip, but after she purchased her ticket, and continued throughout.

5.     Defendants' violation of 42 U.S.C. § 12184(a) and 49 C.F.R. § 37.167(j) occurred through out each bus trip.

## PARTIES

6.     Plaintiff Sabina Williams is an African-American citizen of the United States and resides in Atlanta, Georgia.

7.     Plaintiff is disabled under 42 U.S.C. § 12102(1).  She has impairments that substantially limit one or more of her major life activities.

8.     Defendant Panda Travel, Inc. is a Georgia corporation, with its principal place of business in Doraville, DeKalb County, Georgia. Its corporate headquarters are located at 5745 Buford Hwy, NE, Suite 103, Doraville, Georgia. According to the Secretary of State's website, *Li Wang* is Panda Travel, Inc.'s Chief Financial Officer.  Defendant Panda Travel, Inc. issues sales tickets for bus travel bearing the names of PandaNY, WandaCoach, Pandora, and Pandora Bus which the Plaintiff rode.

9.     Defendant Panda Travel, Inc.'s ticket agents assign seat numbers to customers and routinely assign black people seats toward the back of the bus and Asians toward the front.

10.    Defendant Eagle Bus, Inc. is a Massachusetts corporation, with its principal place of business in 633 Trapelo Rd, Suite 102, Waltham, Massachusetts.  Its corporate headquarters are located at, 633 Trapelo Rd, Suite 102, Waltham, Massachusetts.  Defendant Eagle Bus, Inc., as listed on the Secretary of the Commonwealth of Massachusetts's website, identifies Li Wang as *President, Treasurer, Secretary, and Director (same name listed as CFO of Panda Travel)*

4

with his individual address as, 1608 Emerywood Dr., Charlotte, NC 28210.

Defendant Eagle Bus, Inc. owns and operates some of the buses on which Plaintiff

rode (Massachusetts' tag # 97961) and carries the United States Department of

Transportation No. 2556441 (U.S. DOT#: 2556441). According to the U.S.

Department of Transportation website, Defendant Eagle Bus, Inc. operates 27 buses

with 42 drivers.

11.     On information and belief, Eagle Bus, Inc. is a large, fixed-route operator

within the meaning of 42 U.S.C. §12181; an over-the-road bus (OTRB) operator

within the meaning of 42 USC § 12181(5) and 49 C.F.R. § 37.3; and a Class I motor

carrier within the meaning of 49 C.F.R. § 369.2.

12.     Defendant Eagle Bus, Inc. is a private operator of fixed-route transportation

service that is engaged in the business of transporting people and whose operations

affect interstate commerce within the meaning of 42 U.S.C. § 12184 and 49 C.F.R.

§§ 37.3 and 37.5(f).

13.     Defendants *alias* PandaNY, Inc., is the name on some of the tickets purchased

by the Plaintiff on-line and through Panda Travel, Inc. at the Atlanta Bus Station

located in Doraville, DeKalb County, Georgia and the New York Bus Stations.

Defendant PandaNY, Inc., is *not* incorporated with the Georgia *or* New York

Secretary of State but its website, PandaNYbus.com list an office location of 5745 Buford Hwy, NE, Suite 103, Doraville, Georgia, the same address as Panda Travel, Inc.  Several articles including a "New York Post" article describe PandaNY as "PandaNY a.k.a. Eagle Bus, Inc."

14.     Defendant *alias* Pandora Bus, is another name on some of the tickets purchased by Plaintiff including a bus route from Atlanta, Georgia to New York, New York.  Pandora Bus is *not* a registered company in Georgia.  According to the website GotoBus.com, which also sells tickets on-line, the bus station location for Pandora Bus in Georgia is 5745 Buford Hwy, NE, Doraville, Georgia, the same location as Panda Travel who sold tickets to Williams.  Pandora Bus showed three bus stations for the New York area, 19 Allen St, 19 Pike St, and 103 Canal St, New York.

15.     Pandora Tours, Inc. is registered in the state of New York (DOS ID #: 4513692) with the DOS Process names and address as, *Jin Chun Pan and Wang Li*, 19 Pike Street, New York, New York, 10002.  *Li Wang* also serves as a corporate officer for defendants Panda Travel, Inc. and Eagle Bus, Inc.

16.     PandoraBus, Inc. is registered company in New York (DOS ID #:4520269) with the DOS Process name and address as, *Jin Chun Pan*, 19 Pike Street, New

York, New York 10002.  New York does not list any assumed names for this

PandoraBus, Inc. but Pandora Bus is likely a d.b.a. for PandoraBus, Inc. and

possibly other Defendants.  *Jin Chun Pan* is also an officer of Panda Tours, Inc.

17.     Defendant W & G Agency, Inc. is registered in the state of New York (DOS

ID #: 4553416) with the DOS Process names and address as *Wang Li*, 19 Allen

Street, New York, New York, 10002 (*Wang Li is an alias of Li Wang as the North*

*Carolina foreign corporation for same corporation shows Li Wang as the*

*President*).  According to WandGBus.com the Bus Station for Georgia is 5745

Buford Hwy, NE, Doraville, Georgia.  W & G Agency, Inc. is *not* registered in

Georgia as foreign corporation.  According to WandGBus.com the Bus Station for

North Carolina is 3301 Freedom Dr, Charlotte, NC.  W & G Agency, Inc. is

registered in North Carolina as a foreign corporation listing *Li Wang* as the

President.  On information and belief, tickets sold bearing the name WandaCoach is

an alias for W & G Agency, Inc.  Some tickets purchased by Plaintiff were sold

under WandaCoach and/or W & G Agency.

18.     Defendant Li Wang, is a resident of the State of North Carolina, with

individual residence listed as 1608 Emerywood Dr., Charlotte, NC 28210 USA. He

holds one or more of the positions of director, president, vice-president, treasurer, or

secretary in the listed Defendant corporations.

19.    On information and belief, Defendants owned, operated and maintained control over the buses which the Plaintiff bought tickets for bearing the names PandaNY, WandaCoach, and Pandora, and rode, at all times pertinent to this lawsuit.  Defendants committed, authorized, sanctioned, ratified and approved the unlawful policies, action and conduct described and complained of in this Complaint.

20.    On information and belief, the aliases PandaNY Bus, Inc, Pandora Bus and Wanda Coach are, individually and collectively, aliases of Li Wang and/or the other Defendants.

21.    On information and belief, the Defendants individually and collectively, operate fixed routes of transportation accessible to the public across state lines affecting interstate commerce using over-the-road buses.

22.    On information and belief, Li Wang controls Panda Travel, Inc, Eagle Bus, Inc., Pandora's, Inc., Pandora Tours, Inc., W&G Agency, Inc. and directs the business operations of each and sets the policies and procedures of each, include the policy and procedure of sending black people to the back of the bus and not allowing black people to sit at the front of the bus, even if they are disabled or experiencing physical pain.

23.     On information and belief, Eagle Bus, Inc. and one or more of the other Defendants are "alter egos" of Li Wang.

**FACTS**

24.     On or about December 1, 2015, Plaintiff Williams began using Defendants' buses and/or tickets for one leg of her travel (Atlanta to New York) to her medical appointments in Boston.  After taking Defendants' buses and/or tickets to New York, Williams would have to take another bus line to Boston.

25.     Williams often has to take several trips per month to these doctor's appointments.  Due to the expense of frequent trips she sometimes is forced to ride the overnight bus up, go to the doctor's appointment, and turn around and take the next overnight bus back home without the luxury of overnight hotel accommodations between trips.

26.     Williams is disabled, suffering from lower back pain, right leg pain, and spinal stenosis of the lumbar region, which makes it difficult for her to walk, causes nerve pain, causes weakness in her lower extremities, and makes it difficult to sit in the narrow confined areas and to walk very far.

27.     Defendants assigned tickets to Plaintiff and denied her access to priority seating on the basis of her race on bus trips originating and terminating from the

5745 Buford Hwy, NE, Doraville, Georgia location ("the Atlanta Bus Station") and on bus trips originating and terminating from Allen Street, New York, NY, Pike Street, NY, and Canal St, New York, NY locations ("the New York Bus Stations").

28.    Plaintiff purchased the tickets for Defendants' buses at the Atlanta Bus Station, New York Bus Stations or on-line.

29.    When a ticket is purchased, a seat assignment number is written on the ticket by Defendants' ticket agents, but the seat assignment is not typically strictly enforced.  However, seating in the front of the bus is restricted: Asians and stacks of bags are given priority while African Americans are sent to the back of the bus.

30.     The back of the buses are often kept unclean with the bathrooms lacking care to prevent them from having profuse odors of urine and fecal material.

31.    Numerous on-line negative reviews report the lack of cleanliness of the buses specifically at the back of bus where African Americans are assigned seating.

32.    The segregation practices of the Defendants are well known and a topic of conversation for those riding the buses.  On-line reviews documenting customer's complaints of the discriminatory practices are available.  Customer's experiencing the discriminatory practices have made complaints.

33.     Beginning in December 2015 through July 2017, after having purchased her bus ticket, Williams made numerous requests to Defendants' personnel to sit in the disabled 'priority seating' at the front of the bus.  Drivers continually denied her accommodation to this seating telling her to 'go to the back of the bus'.  Of little to no avail, other passengers have also tried to intervene on her behalf recognizing her pain and need for access to the priority seating.

34.     Disability priority seating, *i.e*., the 4 seats at the front of the bus, excluding the driver's seat, allows for additional legroom compared to a regular seating, reduced the walking distance, and allowed for easy entry and departure from the bus without as much risk of being bumped while trying to navigate the isle.  Because she was denied the easier access and extra sitting space on her trips on Defendants' buses, she suffered physical pain and injury.  She also suffered humiliation, emotional distress and other forms of mental anguish and suffering.

35.     Williams after several trips on Defendants' buses began to notice that the African Americans were consistently denied access to the priority seating, told to go to the back of the bus, while the Asian customers are allowed to sit in the seats in the front, without regard to disability.

36.    The drivers, who are often Asian (probably Chinese), will allow other Asians to sit, including substitute Asian drivers, on the front seats but not African Americans.   Sometimes, the drivers will pile black bags on the front seats to keep African Americans from using the seats until an Asian boards.  Sometimes a front seat is left occupied by stacks of bags, even if Plaintiff made a request to sit in priority disability seating on account of her disability.

37.    On March 8, 2016, Williams purchased a Panda bus ticket at the Atlanta Bus Station to New York from Atlanta.  She requested disability priority seating and was denied it when she entered the bus.  She boarded and sat on a row that had two vacant seats.    Somewhere in North Carolina, at a stop, Williams again asked for priority seating, because she was in substantial pain.  However, instead, the driver brought another person to the vacant seat by Williams who encroached into Williams space.  Williams suffering from tremendous pain, got up and made her way to the front to ask about some different seating arrangements.  Before she could even get her request out to be seated in the disability 'priority seating' at the front of the bus, the driver said, no.  Williams continued with her request, pointed out her disability, but the driver would not even acknowledge her.  At that time there was an Asian man stretched out sleeping on two of the front seats (not directly behind driver) and behind the driver sat 2 young Asian ladies (in the other front seats).

12

Williams sat on the floor in the middle of the bus, waiting for an answer from the bus driver, her body tired from standing and so she could straighten out her legs without the pressure. He never responded. After about an hour, she went back to the seat in the back.  The bus arrived in New York the next morning, March 9, 2016.

38.    On the return trip, March 10, 2016, Williams having received a medical injection and in pain, boarded the bus, and took the vacant front seat opposite the driver.  The driver immediately demanded she go to the back of the bus and Williams refused.  Several employees from the bus company and the agents boarded the bus using intimidating words to try to get Williams to move to the back of the bus.  They threatened to call the police, but Williams refused to move.  Some patrons on the bus spoke in favor on Williams maintaining the seat and others scorned and ridiculed Williams for holding up their bus trip.

39.    Panda did call the police on Williams, when she refused to move.  Eventually, Officer Moore, Badge #2984, arrived and after speaking with the Panda bus driver, other Panda employees and Williams, Officer Moore told Williams she was allowed to maintain her seating.  The incident was extremely embarrassing to Williams and left her crying.

40.     At the rest stop on this trip, the driver stopped the bus at a much greater

distance away from the building (good football field away) than usual which was

not close enough distance for Williams to be able to walk and she feared they would

leave her if she got off the bus.  Williams believed this was retaliation for sitting in

the front seat and is a deprivation and infringement of her contractual rights under

42 U.S.C. § 1981.

41.     On March 23, 2016, Williams took Panda bus again from Atlanta to New

York and was denied access to a front seat.

42.     Prior to the June 5, 2016 Panda bus trip, Williams tried to secure priority

seating by booking on-line, but the web-site would put the booking into a

continuance spinning loop.  She additionally requested priority seating at the counter

prior to boarding but was refused accommodations.  When boarding Defendants'

bus she again asked for priority seating on account of her disability and she was told

to move to the back of the bus.

43.     On the July 11, 2016 Panda bus trip, Williams requested to sit at the front

which was empty but again was denied access, even though she pointed out her

disability and asked to stay in the front.  On July 13, 2016 on the return trip from

New York she was again assigned a ticket toward the back of the bus and denied disability priority seating.

44.     On August 3, 2016 Panda bus trip, after purchasing her PandaNY ticket Williams was denied access to the disability priority seating; other African Americans were also denied this access.

45.     On this August 3, 2016 trip, Williams recalls a disabled African American man and his 11-year-old child who requested the disability priority seating and was denied access even though it was available at the front.  The disabled man upon trying to use the seat was told by the driver, "No, can't sit there, it's for the disabled. Disabled."  To which the man quickly replied, "I AM disabled".  The driver got up out of his seat, leaving the bus idling and escorted the disabled African-American man and his daughter to the back of the bus.  With only two other vacant seats on the bus, the disabled father and child were required to sit separately at the back of the bus.

46.     The Defendants' drivers have acknowledged on several occasions that the priority seating is for the disabled, but would nevertheless not allow Williams or other African Americans to occupy disability priority seating.

47.    On November 2, 2016 bus trip with Panda NY e-ticket from Atlanta to New York, Williams tried to insist on priority seating at the DeKalb bus station.  The driver called over a local police officer who told Williams that he was familiar with the Federal disability act but didn't care, the company 'had rules' and 'they could run their business the way they wanted to.'  Williams was emotionally stressed and suffered humiliation, mental anguish and aggravated physical pain as a result of the driver calling a police officer.

48.    On the return trip from New York, November 4, 2016, Williams was issued a Pandora Bus ticket and again requested but was denied access to the front of the bus disability seating despite there being vacant seating.  Williams would ask for priority seating each time at the window while paying, again when getting on the bus and if the seats were visibly vacant.

49.    December 13, 2016, Williams using her e-ticket boarded a PandaNY bus (in Atlanta).  She requested access to the disability priority seating and was denied but given a seat on row 5.  Another disabled African American man was told to leave the priority seating and a young Asian girl was given access to the seat.  The bus tag number was 97961, a Massachusetts plate. DOT inspection reports show this bus belonging to Eagle Bus, Inc.

50.    On the return trip, December 15, 2016, upon boarding with all four disability priority seats available, Williams sat down.  The driver looked up from his seat and nastily told Williams, "Go Go, not sit there".  Williams showed her cane to him. The driver shook his head no, saying, "Go. Anything behind the second seat." Williams telling him she was in a lot of pain and needed the extra space.  He said, "No. Doesn't matter. Go".  Another passenger spoke up, telling Williams not to leave, that they only wanted to allow the young Asian girls to sit up front.  Williams distraught moved.  The bus tag number on the bus was 93744 which is also shown on a DOT inspection report and listed as being owned by Eagle Bus, Inc.

51.    On March 20, 2017, with Panda e-ticket from Atlanta to New York, Williams again asks for disability priority seating and is refused.  Returning with a Panda e-ticket, March 24, 2017, Williams and a disabled veteran with a prosthetic leg requested but were denied access to disability priority seating.

52.    March 29, 2017, Williams boarded Defendants' bus in Atlanta.  She asked for priority seating on account of disability but was denied it on account of her race. The bus headed to New York for doctor's appointment and arrived early the next morning (5:30 a.m.); the bus driver chose to drop the patrons off at a location other than the New York Bus Stations requiring them to walk great distances in the dark.

After her doctor visit, her PandaNY e-ticket dated March 30, 2017, she headed home to Atlanta.

53.     During the early morning hours of the 31st bus ride back to Atlanta, a young African American pregnant woman was speaking in a rather loud tone to her mother on the phone.  She had gotten up and requested to sit in the 'priority seating' because of swelling in her ankles.  She was told no by the bus driver but continued to try to explain that her ankles were swelling because of the pregnancy.  She said the bus driver began tapping on the brakes in an effort to try to get her to go sit back down.  It caused her to fall.

54.     Plaintiff has ridden Defendants' buses many times because of needing transportation to get to her medical appointments but in addition to the above incidents, on June 20th, 21st, July 10th and 12th, July 17th and 19th 2017 Williams repeatedly requested access to the disability priority seating but was denied because she was African American.

55.     At each of these times, there were Asians sitting in the front part of the bus and there was extra space in the front part of the bus that Plaintiff could have used as a seat, had she been allowed.

56.     The Defendants issue tickets that do not contain the statement required by 49 C.F.R. § 374.103.

18

57.    Exhibit A to this Complaint contains a table identifying certain trips Plaintiff took on Defendants' buses or using Defendants' tickets and selected information about those trips.

## COUNT  I

(Violation of 42 U.S.C. § 1981)

58.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 57 above, as if set forth fully herein.

59.    At all times material to this action, Plaintiff, while seeking transportation and services from Defendants, presented herself in a fit and proper manner, both in terms of dress and conduct.

60.    After Plaintiff purchased her ticket on each trip, Defendants' ticketing agent typically assigned her a ticket toward the back of the bus on account of her race.

61.    After Plaintiff purchased her ticket, Defendants refused to allow Plaintiff to utilize the disability priority seating (that is, the 4 front seats) when she requested it, or otherwise denied, Plaintiff access to disability 'priority seating' because of her race.

62.    Defendants' bus driver called the NYC police on plaintiff in March 2016 in order to prevent her from using a priority disability seat.   After the police explained the law to the driver and allowed the Plaintiff to maintain the priority seating, the

19

driver subsequently made calls on his cell phone in which he mentioned

discrimination laws.  The incident caused mental anguish, humiliation and

emotional stress to plaintiff.

63.     Despite the bus driver's warning his superior of violation of Federal

discrimination law, the Defendants continued to deprive Plaintiff of priority seating

on subsequent trips.

64.     Additionally, adding insult to injury, and compounding physical and mental

pain and suffering, on November 2, 2016 the Defendant again called over a police

officer who was parked at the DeKalb bus station.   She was totally humiliated by

this black officer who was acting at the behest of the bus driver, who required her to

relinquish her seat.

65.     At all times relevant to the events described in this Complaint, the drivers,

ticket agents, customer service personnel, supervisor(s), manager(s) and other

employees were acting within the scope of their employment and were acting in

their capacities as employees, agents and/or representatives of Defendants.

66.     On information and belief, the discriminatory practices described in this

Complaint were carried out (i) at the direction of and with the consent,

encouragement, knowledge, and/or ratification of Defendants, and in particular of Li

Wang; (ii) under Defendants' authority, control and supervision; and/or (iii) within the scope of the employees' employment.

67.    Defendants' actions were undertaken intentionally and purposefully, with racially discriminatory animus, for the purpose of denying Plaintiff equal treatment on the basis of her race.

68.    Defendants acted maliciously, in bad faith, and with willful, callous, wanton and reckless disregard for Plaintiff's federally-protected rights.

69.    Defendants treated similarly situated Asian persons differently from Plaintiff.

70.    Defendants failed to conduct a full and adequate investigation of the Williams' complaint and instead called the police to her.

71.    By the actions described in this Complaint, Defendants have denied Plaintiff of her right to make contracts on the same basis as Asian persons, and deprived Plaintiff of the enjoyment of the benefits, privileges, terms and conditions of a contractual relationship, in violation of 42 U.S.C. § 1981.

72.    As a proximate result of the actions of Defendants described in this Complaint, Plaintiff has suffered, continue to suffer, and will, in the future, suffer great and irreparable loss and injury including, but not limited to, severe physical pain, humiliation, embarrassment, emotional distress and mental anguish.  Plaintiff

is entitled to substantial monetary damages for these violations of law under 42 U.S.C. § 1981.

73.    In addition, Defendants engages in a pattern and practice of discriminating against African Americans in the provision of transportation, goods and services.

74.    Defendants knowingly authorizes, assists, encourages and condones the discriminatory conduct described in this Complaint by, among other things, managerial authorization of, and participation in, discrimination and otherwise failing to investigate and address adequately numerous occurrences and complaints of discrimination.

## COUNT II

### (42 U.S.C. § 1983)

75.    Plaintiff realleges and incorporates by reference Paragraphs 1 - 74.

76.    When Defendants' bus driver in Atlanta in November 2016 called over a police offer to require her to relinquish her disability priority seat, it violated 42 U.S.C. § 1983, by using a police officer acting under color of law to enforce its racially discriminatory rules, and caused her substantial emotional distress and humiliation and physical suffering and pain attendant to being denied a priority seat.

77.    When in March 2016 Defendants' bus driver in New York City called a police offer to have her removed from a priority disability seat on account of her

race, the Defendants' also breached 42 U.S.C. § 1983.  This action resulted in her being ridiculed by some passengers for delaying the bus trip and she was humiliated and left in tears.  The action of delaying to bus trip by calling the police officer to have her removed violates 42 U.S.C. § 1983 even though the police officer (thankfully) allowed Williams to continue to occupy a disability priority seat.  This incident clearly placed Defendants on notice of their obligations under the law, yet the Defendants continued to disregard the laws.

## COUNT III

### (ADA – 42 U.S.C. § 12184)

78.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 77.

79.    Defendant violated 42 U.S.C. § 12184.

80.    Defendant violated ADA implementing regulations 49 C.F.R. § 37.5(f) & (i)(1).

81.    Defendant violated ADA implementing regulation 49 C.F.R. § 37.161 by failing to maintain the accessibility of the buses.

82.    Defendant violated ADA implementing regulation 49 C.F.R. § 37.167(j). Defendants recurrent refusals to allow Plaintiff, who is obviously disabled and walks with a cane and is often in pain, to sit in one of the front seats with extra room

for her legs, even after she asks and explains her disability, show a violation of this regulation.

83.     Defendants violated ADA implementing regulation 49 C.F.R. § 37.173 by failing to adequately train its drivers and personnel who assign seats.  The recurrent nature of the violations show that defendants' drivers and other personnel are not only not trained properly in the ADA but seemingly are instructed by management to disregard it or to implement it in ways inconsistent with legal obligations.  The priority seating was sometimes occupied by Defendants' own employees in preference to the disabled.

84.     The Defendants failed to make modifications to its policies and procedures as required by 42 U.S.C. § 12184(b)(2), which cross-references 42 U.S.C. § 12182(b)(2)(A)(ii), necessary to accommodate Plaintiff and other disabled persons. For example, Defendants' bus drivers, while acknowledging that the front seats are for the disabled, use that as an excuse to hold the priority seating vacant. Defendants appear to have a policy or rule of not allowing disabled black persons to sit in the front, even when a request is made by the disabled passenger.

85.     While Plaintiff is not entitled to damages for breach of 42 U.S.C. § 12184, she is entitled to declaratory judgment and injunctive relief and reasonable attorneys' fees and expenses (see 42 U.S.C. §§ 12188(a) and 2000a-3).

## COUNT IV

### (Injunctive Relief)

86.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 85 above, as if set forth fully herein.

87.     Defendants' discriminatory conduct on the basis of race violates 42 U.S.C. § 1981, 42 U.S.C. § 1983, 49 U.S.C. § 14101, 49 C.F.R. § 374.101, and 49 C.F.R. § 374.103.

88.     Defendants' discriminatory conduct on the basis of disability violates 42 U.S.C. § 12184, and 49 C.F.R. § 37.5(f) & (i)(1), § 37.161, § 37.167(j), and § 37.171.

89.     Because of Defendants' low prices and Plaintiff's limited financial means, Plaintiff may again need to ride Defendants' buses.

90.     Defendant regularly violates the forgoing statutes and regulations and is likely to continue to do so.

91.     Plaintiff seeks injunctive relief to prevent the recurrence of Defendants' violation of her rights and Defendants disregard of the foregoing statues and regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant her relief as follows:

(a)    enter a declaratory judgment finding that the actions of Defendants as alleged in this Complaint violated, on account of race discrimination, 42 U.S.C. §1981, 42 U.S.C. § 1983, 49 U.S.C. § 14101, 49 C.F.R. § 374.101, and 49 C.F.R. § 374.103;

(b)    enter a declaratory judgment finding that the actions of Defendants as alleged in this Complaint violated, on account of disability discrimination, 42 U.S.C. 12184, 49 C.F.R. § 37.5(f) & (i)(1), 49 C.F.R. § 37.161, 49 C.F.R. § 37.167(j) and 49 C.F.R. § 37.171;

(c)    enter a permanent injunction, or an injunction of at least two years, barring Defendants from continuing to engage in illegally discriminatory conduct against Plaintiff and other African Americans and disabled persons who might ride Defendants' buses in the future or purchase tickets from them;

(d)    enter an injunction, effective for at least two or more years, directing that Defendants take all affirmative steps necessary to remedy the effects of the illegally discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

(e)     award compensatory damages in an amount that would fully compensate

Plaintiff for her damages, including but not limited to, physical pain,

humiliation, embarrassment, emotional distress, and mental anguish,

caused by Defendants' violations of the law, as alleged in this Complaint;

(f)     award punitive damages to Plaintiff in an amount that would punish

Defendants for the intentional, malicious, callous, bad faith, willful,

wanton and reckless misconduct alleged in this Complaint and that would

effectively deter Defendants from future discriminatory behavior;

(g)     award Plaintiff their attorneys' fees and costs; and

(h)     order all other relief deemed just and equitable by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff demand a trial by jury on all issues so triable as of right.

Dated:  February 21, 2018.

/s/Carl L. Sollee, Esq.
GA Bar No. 000242
Attorney for the Plaintiff
Sollee Law, LLC
1376 Sheffield Dr NE
Atlanta, GA 30329
(678) 358-5348
carl@solleelaw.com